UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| ROSEMARY THURMAN, ADMINISTRATRIX OF THE ESTATE OF PAUL D. DEMAREE, deceased, and LORI OSBOURNE, mother and next friend of KAYCEE DEMAREE, a minor, Plaintiffs, V. JOHN HAWKINS, WILLIAM LINDON, and DERRAN BROYLES, Defendants. | Civil No.: 13-50-GFVT **MEMORANDUM OPINION & ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

When Kentucky State Police Troopers John Hawkins, William Lindon, and Derran Broyles forced entry into a location of a reported domestic dispute, they found an intoxicated and suicidal Paul Demaree, who had a gun pointed to his head. An alleged four minutes and twelve shots later, Demaree was dead. Rosemary Thurman, as the Administratrix of the Estate of Paul Demaree, and Lori Osbourne, as mother of Kaycee Demaree, claim that the Police Defendants' deadly force constitutes an unlawful seizure under the Fourth Amendment as actionable under 42 U.S.C. § 1983.[1] These Plaintiffs have also asserted state law claims against the Police Defendants for wrongful death, battery, negligence, gross negligence, inadequate supervision,

---

1 For the purposes of simplicity, these Plaintiffs shall be referred to collectively as "Demaree's Estate."

and loss of parental consortium. Sergeant Darren Broyles moves to dismiss the claims against him on the grounds that he is shielded from suit by the doctrines of qualified immunity and qualified official immunity. For the reasons the follow, the Court shall **GRANT** Sergeant Broyles's motion and the claims against him shall be **DISMISSED**.

I

According to the Complaint, at about 10:00 p.m. on August 17, 2012, the Kentucky State Police dispatch in Frankfort received a call reporting domestic violence at the residence of Paul Demaree. [R. 1 at 2]. KSP Troopers John Hawkins and William Lindon responded to the call and arrived at the residence at approximately 10:08 p.m. [*Id.*] Planning to forcibly enter Demaree's home to make an arrest, Hawkins called his superior officer, Sergeant Derran Broyles, for authorization. Sergeant Broyles instructed Troopers Hawkins and Lindon to wait on his arrival before carrying out the plan. [*Id.*] En route to the scene, Sergeant Broyles learned that Demaree had pending e-warrants for assault and burglary and he subsequently contacted Franklin County Attorney Rick Sparks. [R. 1 at 3-4]. Sparks confirmed the status of the warrants and that the arrest warrants were sufficient bases to enter the home and arrest Demaree. [R. 1 at 4].

The Complaint alleges that Sergeant Broyles arrived at approximately 10:13 p.m. and approved the plan to forcibly enter the home and effectuate the arrest. [*Id*. at 2]. Once inside, the Troopers found Demaree heavily intoxicated and pointing a handgun at his own head. [*Id*. at 3]. Hawkins ordered Demaree to drop his weapon and surrender. [*Id.*] Demaree got down on his knees but continued to point the handgun at his temple. [*Id.*] According to the Complaint, Demaree asked the officers, "'Why don't you guys just go away?,' 'Can you guys leave?,' 'Can we end this peacefully?'" [*Id*. at 4]. But the encounter did not end peacefully. When Demaree

refused to put down the gun, the officers took action. The Complaint describes these ensuing actions as follows:

> Lindon improperly deployed the taser weapon and only managed to strike decedent in the cheek with a single dart, failing to complete a circuit because Lindon missed with the other dart at a range of about five feet. Less than a second later, when the decedent attempted to remove the dart from his cheek, Hawkins opened fire with his .40 caliber service pistol, as authorized by Broyles, discharging not less than twelve bullets at a range of about five feet and striking decedent with not less than seven bullets, one through his right atrium, killing him instantly.

[*Id*. at 3]. The Complaint alleges that within seventeen minutes of the initial call to KSP dispatch and less than four minutes from the officers' entry into the residence, Demaree was dead. [*Id*.]

Demaree's Estate claims that the Police Defendants used deadly force to effectuate an unreasonable seizure of Paul Demaree, which violated his rights under the Fourth Amendment to the United States Constitution as actionable under 42 U.S.C §1983. Additionally, Demaree's Estate alleges that the conduct of the Police Defendants supports state law claims for wrongful death, battery, negligence, gross negligence, inadequate supervision, and loss of parental consortium. Though he did not discharge the Taser or fire any shots at Demaree, the Estate claims that Sergeant Broyles is liable because he "authorized" the conduct that brought about Demaree's death. [R. 1 at 3]. Sergeant Broyles counters that the claims against him are not stated with sufficient factual plausibility and, even if they were, he is shielded from these claims by the doctrines of qualified and official immunity. [R. 9-1]. As such, Sergeant Broyles moves the Court to dismiss the claims against him under Federal Rule of Civil Procedure 12(b)(6).

II

A

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to seek dismissal of a complaint which fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, the Court "accept[s] all the Plaintiffs' factual allegations as true and construe[s] the complaint in the light most favorable to the Plaintiffs." *Hill v. Blue Cross & Blue Shield of Mich.,* 409 F.3d 710, 716 (6th Cir. 2005). To properly state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Additionally, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).[2]

B

Broyles contends that Demaree's Estate cannot maintain a § 1983 claim against him because he is shielded by qualified immunity. When invoked, "the doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In evaluating claims of

---

2 Sergeant Broyles argues that the Complaint of Demaree's Estate is too conclusory to survive the more exacting requirements of *Iqbal* and *Twombly*. However, because it is clear that the claims against Broyles should be dismissed on qualified immunity grounds, the Court need not address those contentions.

4

qualified immunity, courts generally apply a two-step analysis. First, "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, the court asks whether the right at issue was "clearly established." *Id.* Although at one time courts were required to follow these steps sequentially, the Supreme Court has abandoned that position and now permits courts to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Finally, once a defendant has raised the defense, "the burden shifts to the plaintiff, who must demonstrate both that the official violated a constitutional or statutory right, and that the right was so clearly established at the time of the alleged violation 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *Thomas v. Plummer*, 489 F. App'x 116, 119 (6th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)).[3]

1

Excessive force claims against free persons that occur during arrest or seizure are analyzed under the Fourth Amendment's reasonableness standard. *Lanman v. Hinson*, 529 F.3d 673, 680 (6th Cir. 2008) (citing *Graham v. Conner*, 490 U.S. 386, 395 (1989)). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment

---

3 Though it is more common to address qualified immunity at the summary judgment stage, Sergeant Broyles can "properly challenge the sufficiency of the complaint under F.R.C.P. 12(b)(6) on the basis that he was entitled to qualified immunity because the facts pleaded would not show that his conduct violated clearly established law of which a reasonable person should have known at the time." *Poe v. Haydon*, 853 F.2d 418, 425 (6th Cir. 1988) (quoting *Dominque v. Telb,* 831 F.2d 673, 676 (6th Cir.1987)); *See also, Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007).

requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. The facts and circumstances of each particular case deserve careful attention, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* At various times the Sixth Circuit has also considered other factors as well, finding for example, "[m]ore force is also proper, which could include deadly force, if the suspect was fighting with the police, *Untalan v. City of Lorain,* 430 F.3d 312, 317 (6th Cir.2005), or was intoxicated and noncompliant, *Monday v. Oullette,* 118 F.3d 1099, 1104–05 (6th Cir.1997)." *Davenport v. Causey*, 521 F.3d 544, 551 (6th Cir. 2008). "Though important, these factors are not the end of the matter, as the court ultimately must determine 'whether the totality of the circumstances justifies a particular sort of seizure.'" *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013) (quoting *St. John v. Hickey,* 411 F.3d 762, 768 (6th Cir.2005)).

When the circumstances at issue involve the use of deadly force, the Supreme Court has provided some constitutional guardrails to guide the reasonableness analysis. "[T]he Fourth Amendment prohibits a police officer's use of deadly force to seize an unarmed, non-dangerous suspect." *Sample v. Bailey,* 409 F.3d 689, 696 (6th Cir.2005) (citing *Tennessee v. Garner,* 471 U.S. 1, 11 (1985)). However, the use of deadly force is permissible if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others...." *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 404 (6th Cir. 2007) (quoting *Garner*, 471 U.S. at 11 (1985)).

Making this determination "in the peace of a judge's chambers," the Court is not

permitted to assess whether, in light of the negative outcome, the officers failed to use best practices in carrying out their duties. *Graham*, 490 U.S. at 396 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (internal citations omitted)). Whether the force used is reasonable is an objective question judged from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014) (citing *Graham*, 490 U.S. at 397-98). Courts do this to allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* (citing *Graham*, 490 U.S. at 397).

Demaree's Estate argues that Sergeant Broyles was in command of the other Police Defendants and authorized their actions. He points to several allegations of the complaint to support his contention that these actions constituted an unreasonable use of force. First, the Estate asserts that Sergeant Broyles unnecessarily rushed onto the scene and escalated the situation. Demaree's Estate notes that, while Paul Demaree did not put down the gun when instructed, he did get down to his knees and asked the officers to leave so that the episode could end peacefully. In the Estate's view, this showed that Demaree was no longer a threat and that he was under the verbal control of the Troopers. Demaree's Estate suggests that the scene did not become volatile until Trooper Liden unsuccessfully deployed his Taser, hitting Demaree in the cheek but not completing the circuit. According to the Estate, this act caused Demaree to reach up to his cheek to remove the barb of the Taser, which is the movement that prompted the officers to open fire without warning. The combination of these allegations fuels the Estate's assertion that it was unreasonable for Sergeant Broyles to have authorized the activity leading to

7

Demaree's death.

The trouble with the conclusions provided by Demaree's Estate is that they are divorced from the factual context of the situation and grounded in hindsight. Sergeant Broyles, like the other officers, did not simply wander into Demaree's home for a casual visit. Instead, he rushed to the house only after Demaree's girlfriend had called the police to report that Demaree struck her. [R. 13 at 1]. There can be no doubt that domestic violence is a serious crime, and that is especially true when, as the officers later learned, a gun was available to the suspect. On the way to the Demaree's home, Sergeant Broyles also acquired information that there were outstanding e-warrants for Demaree for a prior assault. [R. 1 at 4]. Thus, even the Estate's recitation of the facts makes clear that from the outset of the encounter Sergeant Broyles would have had information to suggest that someone in the home could be in danger and that Demaree could be violent. Upon entry into the home, the Troopers found themselves in relatively close proximity with Demaree, who was in the possession of a firearm. Despite directions from Trooper Hawkins, Demaree refused to drop the weapon and pointed it at his temple. Faced with the situation as it is described by the facts of the Complaint, it would be objectively reasonable for Sergeant Broyles to consider Demaree as an immediate threat to his safety and the safety of others because Demaree might quickly move his gun the short distance from himself to the officers. That Demaree got to his knees and requested a peaceful resolution would serve as little plausible comfort considering he refused the order to drop the gun and was clearly intoxicated and suicidal. Even if, as the complaint alleges, Sergeant Broyles authorized the use of the Taser[4]

---

[4] There was some discussion in the briefing as to whether Demaree's Estate had asserted a separate claim involving the non-deadly force of the Taser use. However, at the oral argument and in later briefing, the Estate indicated that it did not intend to assert that the use of the Taser was in and of itself a constitutional violation, but was simply a fact

and, when it was unsuccessful, deadly force, the authorization of such activity is not unreasonable under these circumstances. This is to say nothing, however, of the reasonableness of the other officers' acts in executing the alleged authorization, which the Court need not address in this context. It is sufficient for the present purposes to find that, for the aforementioned reasons, Demaree's Estate has failed to carry its burden of pleading that Sergeant Broyles's conduct constituted a constitutional violation.

2

Even if Sergeant Broyles's authorization of such force would have been characterized as a constitutional violation, Demaree's Estate has made no showing that the constitutional right violated was clearly established. The Supreme Court recently reinforced that:

> a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it. In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate.

*Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (internal citations and quotation marks omitted). Once again, it is the Estate's burden to show "that the right was so clearly established at the time of the alleged violation 'that every reasonable official would have understood that what he [was] doing violate[d] that right.'" *Thomas*, 489 F. App'x at119 (citing *al-Kidd*, 131 S. Ct. at 2083).

Demaree's Estate expressly "admit[s] the paucity of cases of fatal shooting by police of

---

that contributed to the unconstitutionality of the deadly force applied. The Court has considered the unsuccessful deployment of the Taser, but does not find that this fact, alone or when considered in context, gives rise to a constitutional violation. *See Watson v. City of Marysville*, 518 F. App'x 390, 393 (6th Cir. 2013) (noting that prior cases had found "no clearly established right of a suspect to be free from tasing where he or she disobeys police orders and may be in possession of a weapon.").

armed, suicidal, targets of arrest." [R. 26 at 4]. The Estate instead notes that the cases cited by Sergeant Broyles are distinguishable, argues that it should not have to produce a case when the violation is so obvious, and wonders how there would ever be liability for police homicide if such liability requires a prior case. However, as the Court has previously discussed and shall describe in additional detail, this is not the sort of case that is so "obvious" there need be no notice to Sergeant Broyles. *Sample*, 409 F.3d at 699 (noting that "an obvious case" is one that "does not present a novel factual circumstance such that a police officer would be unaware of the constitutional parameters of his actions."). As such, the burden is on Demaree's Estate to point to some preexisting body of law, usually precedent from case law, which would have put Sergeant Broyles on notice, with some degree of specificity, that actions similar to the ones he took constituted a violation of constitutional rights. *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 788 (6th Cir. 2012) ("[I]n light of preexisting law the unlawfulness must be apparent. To resolve this question, this Court must look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits.") (internal quotation marks omitted). By failing to locate and cite any law suggesting that the constitutional violations alleged were clearly established, Demaree's Estate has failed to meet its burden on this level of the analysis.[5] *See Watson v. City of Marysville*, 518 F. App'x

---

5 The Court does not share the Estate's policy concern that if there always must be a prior case giving notice of a constitutional right, there can never be police liability. As an initial matter, there is a robust body of case law describing instances where police action is unreasonable that already exists to put officers on notice. Additionally, the Court notes that the *Saucier* two-part procedure is designed to address the Estate's concern about putting police officers on notice of constitutional rights violations. *Plumhoff*, 134 S. Ct. at 2020 (stating that "the *Saucier* procedure is often beneficial because it promotes the development of constitutional precedent and is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable.") (internal citations and quotation marks omitted).

390, 393 (6th Cir. 2013).

The Estate's failure to carry its burden does not appear to be from lack of effort. The Court's own review of relevant precedent reveals no clearly established constitutional right applicable to this case. Instead, a review of the cases with similar factual scenarios suggests that Sergeant Broyles did not, in fact, violate a clearly established constitutional right.

As previously discussed, the Sixth Circuit has long held that the use of deadly force is permissible if "the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others...." *Livermore ex rel Rohm*, 476 F.3d at 404 (citing *Garner,* 471 U.S. at 11). Subsequent cases with similar factual underpinnings to this one have more clearly defined what is meant by this general rule. The Sixth Circuit recently found deadly force appropriate when an intoxicated and possibly suicidal man, who had previously threatened to kill others, refused to show police his hands, said that he had a gun, and brandished a silver object that turned out not be a firearm. *Simmonds v. Genesee Cnty.*, 682 F.3d 438, 445 (6th Cir. 2012) ("Once Kevin yelled 'I have a gun' and pointed a weapon-like object at the officers in a firing position, in light of all the other information officers possessed regarding Kevin's mental instability and threatening behavior, the officers were constitutionally permitted to use deadly force."). Admittedly, the victim in *Simmonds* did brandish an object he described as a gun in the direction of the officers while Demaree did not remove his gun from his temple. However, the fact that the gun was not pointing directly at the officers is not dispositive. In *Livermore ex rel Rohm v. Lubelan*, the Sixth Circuit held that:

> Even assuming that Rohm was not aiming his rifle at the LAV when he was shot, we nonetheless conclude that Sgt. Lubelan had probable cause to believe that Rohm posed a serious threat to the officers in the LAV—particularly Sgt. Homrich—due to

his proximity to the LAV while armed with a rifle, his prior violent behavior, and his continued refusal to surrender and face arrest.

476 F.3d at 405 (citing *Garner,* 471 U.S. at 11).

In addition to this Sixth Circuit precedent, the Eleventh Circuit Court of Appeals has opined on a nearly identical factual circumstance and found that the deadly force was not unreasonable. In *Garczynski v. Bradshaw*, the eventual victim, John Garczynski, was armed, suicidal, and missing. 573 F.3d 1158, 1167 (11th Cir. 2009). When the police later found him in his car, they ordered him to put down the gun that he was holding to his own head. Rather than drop the gun, he moved it to the direction of the officers, who responded with deadly force that killed Garczynski. Garczynski's Estate argued that there was a dispute of material fact as to whether he ever actually pointed the gun at the officers, but the court found that fact to be immaterial to the ultimate outcome. Specifically, the court stated that "[e]ven if we assumed that Garczynski did not point his gun in the officers' direction, the fact that Garczynski did not comply with the officers' repeated commands to drop his gun justified the use of deadly force under these particular circumstances.[6] *Id.* at 1169. Recognizing that a gun could be pointed at the officers "in a split second," the court noted that "[a]t least where orders to drop the weapon have gone unheeded, an officer is not required to wait until an armed and dangerous felon has

---

6 The court described the "particular circumstances" more clearly in the following paragraph comparing those circumstances to a prior case:

> As in *Montoute,* however, the officers did not have control over Garczynski and there was nothing to prevent him from shooting at the officers in an instant.[3] The officers could reasonably believe that the weapon was loaded, as it actually was, given Garczynski's expressed intent to commit suicide. As in *Montoute,* Garczynski repeatedly disobeyed the officers' orders, first to show his hands and then to drop his gun. These factors, even assuming that Garczynski never pointed the gun at the officers, provided a sufficient basis for the officers reasonably to believe that Garczynski posed an immediate risk of serious harm to them.

12

drawn a bead on the officer or others before using deadly force." *Id*. (citing *Montoute v. Carr,* 114 F.3d 181, 185 (11th Cir. 1997); *See also*, *Long v. Slaton,* 508 F.3d 576, 581 (11th Cir.2007) (wherein the Eleventh Circuit previously acknowledged that "the law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect.").

In the presence of these cases, it is difficult to conceive that Sergeant Broyles could have been on notice that he would be violating a clearly established constitutional right by authorizing the use of deadly force to seize an intoxicated and suicidal man, with a potentially violent background, in close proximity to the officers, with a firearm drawn and pressed to his temple in defiance of direct police order to drop the weapon. Therefore, qualified immunity shields Sergeant Broyles from the Estate's § 1983 claims, which are appropriately dismissed.

B

In addition to the federal claims, Demaree's Estate pursues state law claims against Sergeant Broyles in his individual capacity for wrongful death, battery, negligence and gross negligence, inadequate supervision, and loss of parental consortium. Sergeant Broyles counters that he is shielded from these claims by the state-law doctrine of qualified official immunity.

When public officers are sued in their individual capacities under Kentucky law, the doctrine of qualified immunity protects them from damages liability for negligent performance of "(1) discretionary acts or functions, *i.e.,* those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001) (internal citations

---

*Garczynski*, 573 F.3d at 1169 (citing *Montoute v. Carr*, 114 F.3d 181, 185 (11th Cir. 1997)).

omitted). Discretionary acts are those which "necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued." *Burnette v. Gee*, 137 F. App'x 806, 812 (6th Cir. 2005) (quoting *Upchurch v. Clinton County,* 330 S.W.2d 428, 430 (Ky.Ct.App.1959). "Discretion in the manner of the performance of an act arises when 'the act may be performed in one or two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed.'" *Id.* (quoting *Upchurch,* 330 S.W.2d at 430).

The Estate argues that since there were e-warrants out for Demaree, his arrest was mandatory and Sergeant Broyles's acts in effectuating that arrest were ministerial rather than discretionary. However, as pointed out by Sergeant Broyles, the Estate's own complaint belies that notion. Demaree's Estate alleges that, "Broyles determined to effect the 'mandatory arrest' of decedent by forcing entry into his home and confronting him with deadly force without considering other approaches to the arrest, including waiting outside to allow decedent to once again to pass out from alcohol consumption, as reported by the complaining witness at the scene." [R. 1 at 4]. The Estate also claims that "Broyles, at the urging of Hawkins and Lindon, determined to confront decedent with deadly force immediately, foregoing many options for safe resolution. Among these options were the opportunity to use capsicum or similar spray, tear gas, or other non-lethal force (including competent use of a Taser), to request competent KSP command personnel to the scene, or call for personnel especially trained to avoid deadly force if possible, such as the KSP or Frankfort SWAT, crises intervention, or canine teams." [*Id*.] This recitation of the facts makes clear that Sergeant Broyles had "one or two or more ways" to effectuate the arrest than the manner he chose, and that this decision required "the exercise of

14

reason in the adaptation of means to an end and discretion in determining how or whether the act shall be done or the course pursued." *Burnette*, 137 F. App'x at 812 (quoting *Upchurch,* 330 S.W.2d at 430). Thus, even if the arrest could be said to have been mandatory by virtue of the e-warrants, the manner in which he executed it was, as the complaint itself reveals, discretionary. *See Burnette*, 137 F. App'x at 813 ("There was no indication that an arrest needed to be accomplished, *and if one did, there were multiple ways of going about it*."); *Haugh v. City of Louisville,* 242 S.W.3d 683, 686 (Ky.Ct.App.2007) (noting that under Kentucky law, a peace officer "is entitled to use such force as is necessary, or reasonably appears so, to take a suspect into custody.").

Demaree's Estate further alleges that, even if they were discretionary, Sergeant Broyles's actions were not taken in good faith because he knew they were "likely to result in a bad outcome for Paul." [R. 13 at 8]. The Estate misconceives the notion of good faith. When analyzing objective good faith under Kentucky law, "a court must ask whether the behavior demonstrates 'a presumptive knowledge of and respect for basic, unquestioned constitutional rights.'" *Bryant v. Pulaski Cnty. Det. Ctr.*, 330 S.W.3d 461, 466 (Ky. 2011) (citing *Yanero,* 65 S.W.3d at 523). In contrast, bad faith "can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded a person in the plaintiff's position, i.e., objective unreasonableness." *Id.* (citing *Yanero,* 65 S.W.3d at 522). However, as the Court has previously discussed in some detail, Sergeant Broyles's alleged conduct was in violation of no clearly established constitutional right and was not objectively unreasonable under the circumstances. Further, Sergeant Broyles's alleged conduct not only does not transgress a statutory right, but

15

"Kentucky statutory law entitled the officers to use deadly force to protect themselves or others against death or serious physical injury." *Bradford v. Bracken Cnty.*, CIV.A. 09-115-DLB, 2012 WL 2178994 at *26 (E.D. Ky. June 13, 2012) (citing KRS §§ 503.050 and 503.070). As to subjective bad faith, Demaree's Estate has alleged no facts that would lead to a plausible conclusion that Sergeant Broyles "willfully or maliciously intended to harm [Demaree] in a way that was not authorized by law." *Id*. at *26. Therefore, since Sergeant Broyles has shown that his alleged wrongful activity was discretionary and Demaree's Estate has failed to allege any facts in the Complaint to show that Broyles's actions were not taken in objective or subjective good faith, Sergeant Broyles is shielded by qualified official immunity. The Estate's state law claims against him shall be dismissed.

### III

Society relies on police officers to enforce the law and protect members of the community from danger and harm. When the pursuit of those duties lead officers into volatile situations where their lives or the safety of others are threatened, qualified and official immunity operate to ensure that the specter of personal liability will not paralyze them from taking appropriate action or disarm them of all recourse except simply hoping everything works out peacefully. *See Poe v. Haydon*, 853 F.2d 418, 423 (6th Cir. 1988). However, as the above analysis has shown, these doctrines are not without limits. The shield of qualified immunity is of no use to an officer who takes actions that violate a clearly established constitutional right. To the extent Sergeant Broyles authorized the use of deadly force to meet the potentially perilous circumstances of this case, his actions were not unreasonable under the Fourth Amendment. That does not minimize or diminish the tragedy of Paul Demaree's death. It also does not necessarily mean that Sergeant

16

Broyles's decisions were the right ones or that he is above scrutiny for his actions.  The conclusions set forth herein simply mean that Demaree's Estate has no legal recourse to recover money damages against Sergeant Broyles.  Therefore, Sergeant Broyles's motion shall be granted and all claims against him in this action shall be dismissed.

The Court notes that Demaree's Estate has requested the opportunity to amend its complaint should Sergeant Broyles's motion to dismiss be granted.  [R. 13 at 8].  Sergeant Broyles has indicated that he does not oppose allowing the Estate a final opportunity to replead their Complaint's allegations against Broyles.  Although Demaree's Estate suggested at oral argument that it did not intend to file an amended complaint, the Court shall permit the Estate fourteen days (14) from entry of this Order to file a motion for leave to file an amended complaint.  In the briefing on that motion, the parties should not only discuss whether leave for an amendment is appropriate under Rule 15, but also whether it is required under *Dominque v. Telb,* 831 F.2d 673, 676 (6th Cir.1987) and its progeny.  *See also*, *Tucker v. Callahan*, 867 F.2d 909, 915 (6th Cir. 1989).  At the conclusion of that fourteen-day window of time, if Demaree's Estate has elected not to file a motion for leave to amend the complaint, the Court shall enter final judgment in favor of Sergeant Broyles.

Accordingly, for the aforementioned reasons, it is hereby **ORDERED** as follows:

(1) Sergeant Broyles's Motion to Dismiss [R. 9] is **GRANTED**;

(2) All claims against Sergeant Broyles in this action are **DISMISSED**;

(3) The Plaintiffs shall have fourteen (14) days from the entry of this Order to file a motion for leave to amend the complaint, or the Court shall enter a final judgment in favor of Sergeant Broyles in this matter; and

(4)     A separate Order shall enter directing the remaining parties to meet for the conference required by Rule 26(f).

This 3rd day of September, 2014.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge